*See, e.g., State v. Jones,* 759 P.2d 558, 565–67 (Alaska App.1988); *Wood v. Endell,* 702 P.2d 248, 249–50 (Alaska App.1985); *Hampton v. Huston,* 653 P.2d 1058, 1060 (Alaska App.1982). The ABA standard and the Alaska criminal rule apply only to applications for post-conviction relief. They do not govern applications to modify sentences pursuant to Criminal Rule 35(a). *See Winslow v. State,* 587 P.2d 738, 739–40 (Alaska 1978); 3 C. Wright, *Federal Practice and Procedure: Criminal* § 586 at 405–06 & n. 10 (2 ed. 1982). *Cf. Tookak v. State,* 680 P.2d 509, 512 (Alaska App.1984). For the same reason, we are satisfied that these provisions do not apply to applications pursuant to Criminal Rule 35(b). Consequently, it would appear that the broad discretion accorded trial courts in establishing motion practice in criminal cases would apply. *See, e.g., Selig v. State,* 750 P.2d 834 (Alaska App.1988); *Weidner v. Superior Court,* 715 P.2d 264 (Alaska App.1986). Because Mitchell's application did not state a *prima facie* case under the standards adopted in *Ambrose,* the trial court did not abuse its discretion in failing to hold a hearing. *Fowler,* at 591–592 & n. 2.

The judgment of the superior court is AFFIRMED.

**D.R.D., A Minor, Appellant,**

v.

**STATE of Alaska, Appellee.**

No. A–2622.

Court of Appeals of Alaska.

Jan. 13, 1989.

Margaret Moran, Asst. Public Defender, Kenai, and Dana Fabe, Public Defender, Anchorage, for appellant.

Rhonda Butterfield Roberson, Asst. Dist. Atty., James L. Hanley, Dist. Atty., Kenai, and Grace Berg Schaible, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

SINGLETON, Judge.

The State of Alaska petitioned for a waiver of juvenile jurisdiction over D.R.D., pursuant to AS 47.10.060. The state argued that D.R.D. was over eighteen and one-half years of age, that he had committed several property offenses which would be felonies if committed by an adult, and that he was not amenable to treatment under AS 47.10.060. D.R.D. was before the court on two petitions for adjudication of delinquency. One petition alleged that on September 30, 1987, D.R.D. committed the crime of burglary in the second degree and two crimes of theft in the second degree. The other petition alleged that on June 4, 1987, D.R.D. committed the crimes of burglary in the second degree and criminal mischief in the second degree. The parties stipulated that there was probable cause to believe that the minor had engaged in the delinquent behavior alleged. Thus, the only remaining question was D.R.D.'s amenability to treatment under AS 47.10.060.

D.R.D. had been involved in the juvenile justice system since 1984, when he admitted to having committed burglary in the second degree and criminal mischief in the third degree. A second count of burglary was dismissed with an agreement that it could be considered at disposition. D.R.D., then age 14, was placed on "informal probation" under an order holding a finding of delinquency in abeyance. He was discharged from probation on October 31, 1985. On November 2, 1987, a petition

alleging burglary in the first degree was filed. However, it was dismissed because the purported victim, an aunt, requested that there be no prosecution. D.R.D. acknowledged an alcohol dependency problem, had himself committed to in-patient care at Hope House, a drug rehabilitation institution in Kodiak, and agreed to aftercare upon returning to Kenai. He also made restitution. The state agreed to forego prosecution because of D.R.D.'s age and the limited treatment that the Division of Family and Youth Services could provide if he were adjudged a delinquent at that time. D.R.D. left Hope House without completing the program. Thereafter, the instant charges were filed. The state petitioned to waive juvenile jurisdiction on these charges.

Two waiver hearings were held. At the first hearing, on May 26, 1988, Vicki Wells, an intake officer at Akeela House, Inc., a residential drug treatment facility, testified. Wells was of the view that D.R.D. was suitable for Akeela House and could be rehabilitated within the time remaining before his twentieth birthday. She noted that D.R.D. had not succeeded at Hope House, but testified that it was not an appropriate placement for him. At the June 23, 1988, waiver hearing, Eric Weatherby, a probation officer, testified that D.R.D. had an extensive history of substance abuse. Weatherby said that D.R.D.'s past abuse was dealt with informally by his office and that no petitions were filed. He further testified that attempts to find a suitable treatment facility were unsuccessful, that D.R.D. quickly washed out of the Hope House program, and that, because of D.R.D.'s age, there were no facilities or programs within the Department of Health and Social Services suitable to deal with his substance abuse problem. Weatherby indicated to the court that, in his view, the time available for supervision of D.R.D. within the juvenile justice system was insufficient to motivate him to complete a program such as the Akeela House Program (in which D.R.D. had voluntarily enrolled at the time of the hearing).

D.R.D. testified after Weatherby and consented to the extension of juvenile-court supervision until he was twenty years old, thus giving the state eighteen months in which to supervise him. Weatherby was not asked to indicate whether D.R.D.'s willingness to be supervised for an additional twelve months would change Weatherby's conclusion that D.R.D. could not be rehabilitated within the time available for his supervision as a juvenile. After carefully considering the record and finding that Akeela House might be an appropriate setting for D.R.D., even though he was a juvenile, Judge Hanson concluded that the state had proved by a preponderance of the evidence that D.R.D. could not be rehabilitated within the time remaining for juvenile supervision. He therefore waived D.R.D. for prosecution as an adult. This appeal follows.

## DISCUSSION

Alaska Statute 47.10.060 provides in relevant part:

(a) If the court finds at a hearing on a petition that there is probable cause for believing that a minor is delinquent and finds that the minor is not amenable to treatment under this chapter, it shall order the case closed. After a case is closed under this subsection, the minor may be prosecuted as an adult.

. . . .

(d) A minor is unamenable to treatment under this chapter if the minor probably cannot be rehabilitated by treatment under this chapter before reaching twenty years of age. In determining whether a minor is unamenable to treatment, the court may consider the seriousness of the offense the minor is alleged to have committed, the minor's history of delinquency, the probable cause of the minor's delinquent behavior, and the facilities available to the Division of Youth and Adult Authority for treating the minor.

Judge Hanson concluded that D.R.D.'s offenses were not as serious as "residential burglaries," but that they, nevertheless, were relatively serious. He further found that D.R.D. did not have a significant history of adjudications of delinquency, but that

he did have a significant substance abuse history and that this was the probable cause of his delinquent behavior. Judge Hanson also found that, despite the probation officer's testimony, Akeela House was "available" for the treatment of juveniles. He concluded:

> Although as indicated, I feel that appropriate facilities are available for the treatment of [D.R.D.'s] substance abuse problem, I find there is probably insufficient time remaining until his twentieth birthday in which to accomplish his rehabilitation. The testimony of Ms. Wells of the Akeela House staff indicated that [D.R.D.] was in need of long term residential treatment and aftercare. Although the average in-house treatment at Akeela House lasts only nine months some persons take as long as eighteen months and the aftercare can be expected to last as long as eighteen months. [D.R.D.'s] past history, including his failure at Hope House indicated that he would probably need long term aftercare. The combination in all likelihood would take considerably more than eighteen months and since custody would be terminated at age twenty his motivation to complete the program would likely be greatly diminished.

> Assuming that rehabilitation of the offender is the paramount goal in the treatment of [D.R.D.] so that he will become a noncriminal member of society and thus not a threat to it, the options available to achieve this goal are significantly greater in the adult system. As stated, I feel the Division of Family and Youth Services has more options than it, probably for very good reason, is utilizing nevertheless [sic] the time available under AS 47.10 simply appears inadequate.

> I find that [D.R.D.] probably cannot be rehabilitated by treatment under AS 47.10 before reaching twenty years of age, therefore

> IT IS ORDERED that this case is closed. [D.R.D.] may be prosecuted as an adult.

 Before juvenile jurisdiction can be waived to adult court, the state must prove by a preponderance of the evidence that a child is not amenable to treatment as a juvenile. *F.S. v. State*, 586 P.2d 607, 611–12 (Alaska 1978), *overruled on other grounds, State v. F.L.A.*, 608 P.2d 12 (Alaska 1980). The state cannot sustain its burden by general testimony about the needs of drug and alcohol abusers who require residential treatment. There must be evidence directly addressing the rehabilitative needs of the juvenile in question. The amenability decision must be predicated on a full inquiry into the issue, with a "thorough examination of the child, his [or her] background, and alternative strategies of rehabilitation short of adult criminal treatment." *P.H. v. State*, 504 P.2d 837, 845–46 (Alaska 1972). It is not necessary, however, that the trial court receive psychiatric or psychological testimony regarding the minor. *J.R. v. State*, 616 P.2d 865, 867 (Alaska 1980). The trial court can base its decision, in part, on the testimony of a probation officer familiar with the juvenile and the treatment options available to juveniles under Alaska law. *D.H. v. State*, 561 P.2d 294, 296–97 (Alaska 1977).

 D.R.D. challenges Judge Hanson's decision on a number of grounds. First, he contends that Ms. Wells established his amenability to treatment when she testified that D.R.D. was highly motivated for treatment and could be rehabilitated within eighteen months under the Akeela House program. We find that this argument is unpersuasive. The trier of fact is not bound by expert opinions, but may reach its own conclusions based upon reasonable inferences drawn from the evidence. *Alto v. State*, 565 P.2d 492, 503 n. 17 (Alaska 1977); *Bowker v. State*, 373 P.2d 500, 501–02 (Alaska 1962). After reviewing the record, we conclude that there is adequate support for Judge Hanson's finding. D.R.D.'s serious problems, his failure at Hope House, and uncertainty regarding D.R.D.'s motivation and how long it will last when measured against the amount of time available for rehabilitation before D.R.D.'s twentieth birthday support Judge Hanson's conclusion.

■ Second, D.R.D. argues that since he was not accused of a violent crime, juvenile jurisdiction should not be waived. D.R.D. notes that the majority of cases in which waiver has been approved on appeal have involved very serious crimes of violence. *Cf. D.H. v. State,* 561 P.2d at 298–99. D.R.D. implicitly asks that we adopt a rule which would bar waiver of juveniles accused of conduct which, if committed by an adult, would be nonviolent crimes. D.R.D. relies, in part, on the American Bar Associations's *Standards Relating to Transfer Between Courts,* § 2.2 (1980). We decline to adopt such a rule.

It is true that Alaska law generally permits stricter treatment of those convicted of violent crimes than those convicted of property offenses. *See Leuch v. State,* 633 P.2d 1006, 1013 (Alaska 1981). However, the supreme court has also recognized that a person may be "dangerous" simply because of repeat criminality, even though the person refrains from violence. *See State v. Graybill,* 695 P.2d 725, 729–30 (Alaska 1985). In fact, we have noted that dangerousness is the converse of amenability to rehabilitation. *Kirby v. State,* 748 P.2d 757, 766 (Alaska App.1987). While D.R.D. has not been the subject of frequent delinquency petitions, it appears that during the three-year period from 1984 to 1987, he has frequently been involved in activities which, had he been an adult, would qualify as felony offenses. Under the circumstances, the trial court did not err in concluding that D.R.D.'s conduct was "serious," and that he presented a continuing danger to the community.

■ We recognize that decisions predicting the future are necessarily based on uncertainty. Nevertheless, we are satisfied that Judge Hanson was not clearly erroneous in concluding that there was a sufficient nexus between D.R.D.'s substance abuse and his criminal activity to justify his supervision for a period in ex-

cess of two years. *See, e.g., Tiedeman v. State,* 576 P.2d 114, 116–17 (Alaska 1978) (trial court did not err in imposing five years of probation on person convicted of misdemeanor unlawful entry, given past failures on probation and nexus between alcohol abuse and criminal behavior). Judge Hanson's conclusion that D.R.D. could not be fully rehabilitated in the approximately eighteen months that he would have remained under juvenile jurisdiction before reaching his twentieth birthday was not clearly erroneous. We therefore conclude that Judge Hanson did not abuse his discretion in waiving juvenile jurisdiction over D.R.D.[1]

The judgment of the superior court is AFFIRMED.

---

1. The state moved to supplement the record to include information regarding D.R.D.'s conduct subsequent to the waiver hearing. We denied that motion, preferring to consider only material which was before Judge Hanson and which influenced his judgment in deciding the waiver issue. D.R.D. correctly points out that the state has, nevertheless, alluded frequently to that material in its appellee's brief. We have disregarded that material entirely, resting our decision solely on the evidence before Judge Hanson.