# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### September 19, 2000 Session

## STATE OF TENNESSEE v. ROBERT LEWIS HERRIN

### Appeal from the Circuit Court for Marshall County
### No. 13841     Charles Lee, Judge

---

### No. M1999-00856-CCA-R3-CD - Filed February 9, 2001

---

The appellant, Robert Lewis Herrin, pled guilty in the Marshall County Circuit Court to one count of theft of property worth one thousand dollars ($1,000) or more but less than ten thousand dollars ($10,000), a class D felony.  The trial court sentenced the appellant as a Range I offender to three years incarceration in the Tennessee Department of Correction, suspending all but 120 days of the appellant's sentence and granting him supervised probation for a term of ten years.  As a special condition of probation, the trial court prohibited the appellant from engaging in "any type [of] construction business or solicitation for business."  In this appeal, the appellant argues that the trial court erred in imposing this special condition of probation.  Following a review of the record and the parties' briefs, we affirm the judgment of the trial court as modified.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed as Modified.

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which DAVID H. WELLES and JOE G. RILEY, JJ., joined.

Thomas E. Hansom, Memphis, Tennessee, and Paul J. Bruno, Nashville, Tennessee, for the appellant, Robert Lewis Herrin.

Paul G. Summers, Attorney General and Reporter, Lucian D. Geise, Assistant Attorney General, W. Michael McCown, District Attorney General, and Weakley E. Barnard, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

#### I.  Factual Background

On March 17, 1999, a Marshall County Grand Jury returned an indictment charging the appellant with two counts of theft of property worth one thousand dollars ($1,000) or more but less than ten thousand dollars ($10,000).  The appellant pled guilty to one count of theft on July 1, 1999.  At the guilty plea hearing, the State revealed that the indictment and guilty plea arose from

the appellant's theft of $3,500 from an eighty-three-year-old[1] woman named Dorothy Pinkston on December 21, 1998.

On the date of the appellant's offense, a man identifying himself as Robert Herrin came to Pinkston's home and informed Pinkston that the lightning rods on the roof of her house were damaged and in need of repair. He offered to repair the lightning rods for $3,500. Pinkston agreed and wrote a check payable to Robert Herrin. The man then departed, assuring Pinkston that he would return with the necessary materials and equipment. Following his departure, Pinkston immediately began to feel uneasy about her arrangement with the stranger and called her granddaughter. Pinkston's granddaughter suggested that Pinkston call her bank and attempt to stop payment of the check. However, when Pinkston called the bank and spoke with the manager, she was informed that the check had already been cashed. The stranger never returned to Pinkston's home to repair the lightning rods on her roof.

The police were ultimately able to apprehend the appellant because the person who cashed Pinkston's check provided the appellant's driver's license number to the bank teller. Indeed, at the guilty plea hearing, the appellant admitted that he had personally cashed Pinkston's check, although he maintained that an accomplice had acquired the check from Pinkston. In any event, the appellant agreed that he was criminally responsible for any conduct by his accomplice, specifically noting that he was not entering an Alford or "best interest" plea.[2]

In return for the appellant's plea of guilt, the State recommended a sentence of three years incarceration in the Tennessee Department of Correction. Moreover, the parties agreed that the trial court would determine whether the appellant was an appropriate candidate for alternative sentencing. Accordingly, the trial court conducted a sentencing hearing on September 8, 1999.

At the sentencing hearing, the State relied upon the transcript of the guilty plea hearing, the pre-sentence report, and testimony by Judy Byrd, the probation officer who prepared the pre-sentence report. According to Byrd and the pre-sentence report, the appellant was fifty-eight years old and a resident of Indiana at the time of these offenses. Additionally, the appellant had been married for thirty-five years and had two adult children. The appellant's formal education had ended in the fifth grade in elementary school, and he was currently employed as a laborer in his son-in-law's paving business. Prior to his employment by his son-in-law, he had owned and operated a business that serviced septic tanks.

---

[1]The pre-sentence report indicates that Pinkston was seventy-nine years old

[2]In North Carolina v. Alford, 400 U.S. 25, 37-38, 91 S. Ct. 160, 167-168 (1970), the United States Supreme Court ruled that, when strong evidence of guilt substantially negates a defendant's claim of innocence and a defendant, represented and advised by counsel, intelligently concludes that it is in his best interest to plead guilty, a trial court does not commit constitutional error in accepting the guilty plea. See also Dortch v. State, 705 S.W.2d 687, 689 (Tenn. Crim. App.1985).

The pre-sentence report further reflects that the appellant possesses a criminal record, including a July 7, 1999 conviction in Georgia of theft by deception, for which offense the appellant was placed on probation for a term of ten years. According to the pre-sentence report, the appellant was arrested for the Georgia offense only 2 ½ weeks prior to the offense in this case. Additionally, the appellant's criminal record includes February 14, 1989 convictions in Florida of conducting home solicitation without a permit, engaging in business without an occupational license, engaging in the construction industry without a certificate of competency, and using a commercial vehicle without displaying the necessary business permits. For each of these offenses, the appellant was required to pay a fine and court costs or serve fifteen days in jail.

The appellant paid full restitution to the victim in this case. Nevertheless, Pinkston submitted a victim impact statement in which she expressed her continuing fear of the appellant. She noted that, since the instant offense, she has been nervous during the day and has experienced difficulty sleeping at night. Pinkston asked that the appellant be denied probation.

The appellant testified on his own behalf at the sentencing hearing. He conceded that, in addition to the aforementioned criminal convictions, he was charged in 1993 with theft by deception and deceptive business practices in Pennsylvania as a result of a dispute over a construction project that his son-in-law's paving business had been hired to perform. The appellant noted that the charges were dismissed upon his return of the money paid for the project.

The appellant further testified that, in addition to his employment by his son-in-law, he frequently traveled southward during the wintertime in search of other, temporary employment in the construction trade. He explained that, at the time of the instant offense, he was driving through Tennessee en route to his brother-in-law's home in Cullman, Alabama. He stopped briefly at a Waffle House in Nashville, where he was approached by a man named Rick Shafer. Shafer asked the appellant to cash a check for him, explaining that he had earned the money but did not have a driver's license. Shafer offered the appellant five hundred dollars in return for his assistance. According to the appellant, he agreed because it was almost Christmas and he needed the money. Therefore, he drove with Shafer to Lewisburg, Tennessee, and waited in a Krystal Restaurant while Shafer acquired the check. The appellant then went to the bank and cashed the check. As agreed, Shafer gave the appellant five hundred dollars.

At the conclusion of the sentencing hearing, the trial court accepted the State's recommendation and imposed a sentence of three years incarceration in the Tennessee Department of Correction. Additionally, the trial court suspended all but 120 days of the appellant's sentence and granted the appellant supervised probation for a term of ten years. As a condition of probation, the trial court prohibited the appellant from traveling outside his home county in Indiana and from engaging in "any type [of] construction business or solicitation for business." The trial court explained that

> I have a hunch that Mr. Herrin is involved to much greater extent in
> traveling around the countryside and taking people's money than

what this record shows. The record shows twice. Once in Georgia, once in Tennessee. That I know.

I have a hunch that Mr. Herrin, that this activity is not foreign to Mr. Herrin. This is the way Mr. Herrin makes his money and he has just gotten caught in these two most recent events.

## II. Analysis

On appeal, the appellant argues that the trial court erred in prohibiting him, as a special condition of probation, from obtaining employment in "any type [of] construction business or solicitation for business." Specifically, the appellant asserts that the disputed "condition is not designed to rehabilitate him; on the contrary, it is punitive and contrary to the intentions of probation." The burden is upon the appellant to demonstrate the impropriety of his sentence, including the manner of service of his sentence. Tenn. Code. Ann. § 40-35-401 (1997), Sentencing Commission Comments; see also State v. Burdin, 924 S.W.2d 82, 84 (Tenn. 1996). In determining whether the appellant has satisfied his burden, this court reviews the trial court's sentencing determination de novo. Tenn. Code. Ann. § 40-35-401(d); see also Tenn. Code Ann. § 40-35-210 (1998)(setting forth factors relevant to any determination of the specific sentence and the appropriate combination of sentencing alternatives). However, if the record reveals that the trial court adequately considered sentencing principles and all relevant facts and circumstances, this court will accord the trial court's determination a presumption of correctness. Id.; State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). Because the record indicates that the trial court in this case relied upon a "hunch" in imposing the disputed condition of probation, we decline to accord its determination the presumption.

Under the Tennessee Criminal Sentencing Reform Act of 1989, a trial court has great latitude in imposing conditions on probation. Burdin, 924 S.W.2d at 85. Thus, while Tenn. Code Ann. § 40-35-303(d) (1997) provides a list of possible conditions, the list is not exclusive, and the trial court may require a defendant to "[s]atisfy any other conditions reasonably related to the purpose of the [defendant's] sentence and not unduly restrictive of the [defendant's] liberty, or incompatible with the [defendant's] freedom of conscience, or otherwise prohibited by the chapter." Id. at (9). That having been said, our supreme court in Burdin, 924 S.W.2d at 86, emphasized that the primary purpose of a sentence of probation is rehabilitation of the defendant, and, therefore, "[Tenn. Code Ann. §] 40-35-303(d)(9) cannot be read as granting unfettered authority to the courts to impose punishments which are beyond the bounds of traditional notions of rehabilitation." Accordingly, the court in Burdin held that a trial court could not require a probationer convicted of the sexual battery of a sixteen-year-old child to post a sign in his front yard notifying his neighbors of his conviction. 924 S.W.2d at 87.

Of course, even if a condition of probation is consistent with traditional notions of rehabilitation, a court must take care that the condition is not needlessly broad, i.e., needlessly restrictive of a defendant's liberty, and that the condition is closely tailored to the circumstances of a particular case. For example, in State v. D'Shannon H. Goins, No. 03C01-9704-CR-00154, 1998

WL 597047, at *1 (Tenn. Crim. App. at Knoxville, September 10, 1998), the defendant was convicted of simple assault in connection with a barroom brawl. The trial court sentenced the defendant to eleven months and twenty-nine days incarceration in the county jail, suspending all but sixty days of the defendant's sentence and granting him supervised probation. Id. As special conditions of probation, the trial court prohibited the defendant from frequenting any establishments that sell alcoholic beverages, including grocery stores, and from living with any woman to whom he was not married, including the mother of his child. Id. at *4. On appeal, the defendant challenged these special conditions. First, this court conceded that "a prohibition against entering establishments such as bars and night clubs that sell alcoholic beverages may be within the bounds of traditional notions of probation in appropriate cases." Id. at *5. However, we concluded that extending the prohibition to encompass grocery stores that sell alcoholic beverages rendered the condition of probation "needlessly broad," interfering with the defendant's ability to provide for himself and his family. Id. Second, this court conceded that prohibiting a defendant from living with his family may serve rehabilitative purposes in some circumstances, but we again concluded that the trial court's condition was drawn too broadly, prohibiting the defendant from living with *any* woman to whom he was not married. Moreover, we noted that the particular circumstances of the case did not appear to justify even a narrower restriction. Id.

As to the instant case, we initially note that, contrary to the appellant's argument, courts in several jurisdictions have observed that restrictions upon a defendant's employment may serve rehabilitative purposes. See, e.g., Thomas v. State, 710 P.2d 1017, 1019 (Alaska Ct. App. 1985)(In a case in which the defendant was convicted of four counts of theft in connection with his employment as the skipper of a fishing vessel, the Alaska Court of Appeals concluded that some restriction upon the defendant's ability to fish commercially was related to his rehabilitation.); People v. Lewis, 143 Cal. Rptr. 587, 592-593 (Cal. Ct. App. 1978)(In a case in which the defendant was convicted of four counts of pimping, the California Court of Appeal concluded that a condition of probation prohibiting the defendant from working in bars, taxicabs, or other locations conducive to pimping had a reasonable relation to the likelihood of future criminality by the defendant.); State v. Graham, 633 N.E.2d 622, 624-625 (Ohio Ct. App. 1993)(In a case in which the defendant was convicted of securities violations in connection with his accounting business, the Ohio Court of Appeals concluded that a condition of probation prohibiting the defendant from performing general accounting services for the public was reasonably related to the rehabilitation of the defendant.). We agree with the observation of those courts. Moreover, it seems clear to us that, under the particular circumstances of the instant case, the trial court could reasonably have concluded that some restriction on the appellant's employment in the "construction business or solicitation for business" would contribute to his rehabilitation. As was its prerogative, the trial court did not accredit the appellant's claims that he was ignorant of the source of the $3,500 check. State v. Parker, 932 S.W.2d 945, 956 (Tenn. Crim. App. 1996). Moreover, the appellant's prior criminal offenses similarly related to his employment in the construction trade and his solicitation of business in that trade.

However, it also seems clear to us that a special condition of probation that prohibits the appellant from engaging in "*any* type [of] construction business or solicitation for business" is

far too broad, particularly as the construction trade appears to be this sixty-year-old appellant's primary means of livelihood. Accordingly, we modify the trial court's judgment to reflect a narrower, better-tailored condition of probation. Specifically, we impose the following restrictions upon the appellant's employment: (1) the appellant is prohibited from engaging in solicitation of business in the construction trade; (2) the appellant must notify his probation officer prior to accepting any employment in the construction trade; and (3) the appellant is prohibited from assuming any position in which he has sole supervisory responsibilities over a construction project or in which he is responsible for obtaining, collecting, or managing funds relating to construction projects.

### III. Conclusion

In accordance with the foregoing opinion, the judgment of the trial court is affirmed as modified.

_____
NORMA McGEE OGLE, JUDGE